IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEMIAN A. BALDWIN,                     )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        CIVIL ACTION NO. 3:14-00178
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security,)
                                       )
            Defendant.                 )

# M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on

the Pleadings. (Document Nos. 12 and 13.) Both parties have consented in writing to a decision by the

United States Magistrate Judge. (Document Nos. 5 and 6.)

The Plaintiff, Demian A. Baldwin (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on March 18, 2010 (protective filing date), alleging disability as of July 15, 2008, due

to "back problems, left eye problems, heart valve problem, bipolar rage disorder, [and] high blood

pressure."[1] (Tr. at 20, 163-66, 167-70, 262, 267, 306.) The claims were denied initially and upon

reconsideration. (Tr. at 20, 87-90, 95-97, 100-02, 116-18, 119-21.) On July 22, 2011, Claimant

requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 119-21.) The hearing was held

on August 30, 2012, before the Honorable Michele M. Kelley. (Tr. at 39-86.) By decision dated

---

[1] On his form Disability Report - Appeal, dated August 24, 2010, Claimant reported that his
bipolar disorder, depression, and post-traumatic stress disorder had worsened, as well as his back
and left leg problems. (Tr. at 306.)

September 28, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-31.) The ALJ's decision became the final decision of the Commissioner on November 1, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On January 2, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the

claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning;

3

concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since July 15, 2008, the alleged onset date. (Tr. at 22, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "low back pathology with radiculopathy; status post laminectomy and fusion at L4-L5; cerebral aneurysm; and depression and anxiety," which were severe impairments. (Tr. at 22, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform a limited range of sedentary exertional level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as follows: he can stand and walk two hours in an eight hour day; sit for six hours in an eight hour day, as long as he has the option to sit and stand every two hours; push and pull ten to twenty pounds with the upper and lower extremities; occasionally climb ramps and stairs, bend, balance, stoop, crouch, crawl; never climb ladders, ropes or scaffolds; and never tolerate concentrated exposure to vibrations and hazards such as unprotected heights, dangerous machinery and uneven surfaces. He can perform simple routine tasks involving no more than simple, short instructions, make simple work-related decisions, and tolerate few workplace changes, occasional interaction with the public, and frequent interaction with coworkers and supervisors.

(Tr. at 24-25, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past

5

relevant work. (Tr. at 29, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an inspector, security monitor, and monitor, at the unskilled, sedentary level of exertion. (Tr. at 30, Finding No. 10.) On this basis, benefits were denied. (Tr. at 30-31, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 16, 1973, and was 39 years old at the time of the administrative hearing, August 30, 2012. (Tr. at 29, 47, 163, 167.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 29, 51-52, 266. 268.). Claimant had past relevant work as a shipping/receiving clerk, records clerk/general office clerk, telemarketer, shop blaster, and cook.

(Tr. at 29, 77-78, 250-61, 269.)

 Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider SSR 96-9p respecting the limitations from his mental impairments when assessing his RFC. (Document No. 12 at 5-6.) He asserts that contrary to the ALJ's findings of mild limitations in maintaining activities of daily living; social functioning; and concentration, persistence, or pace, the findings of Ms. Tate and Ms. Wilson established that he suffered from opioid dependence in remission with methadone treatment, mood disorder with features of depression, and panic disorder without agoraphobia. (Id. at 6.) Claimant contends that an individual with these mental impairments is precluded from performing sedentary exertional level work. (Id.)

In response, the Commissioner asserts that the ALJ complied with SSR 96-9p, by finding that Claimant had less than substantial loss of ability to perform basic mental work activities when she found that Claimant was capable of performing simple, routine tasks involving simple short instructions, simple work-related decisions, and few workplace changes; occasional interaction with the public; and frequent interaction with co-workers and supervisors. (Document No. 13 at 11.) Then the ALJ consulted a VE, as set forth in SSR 96-9p. (Id.) The Commissioner therefore contends that the ALJ complied with SSR 96-9p. (Id.) Respecting the mild limitations in the three broad functional areas, the Commissioner asserts that the ALJ's findings are supported by the State agency psychologists' opinions of Dr. Shaver and Dr. Binder. (Id. at 12-13.) The Commissioner asserts that the record contained no opinion that contradicted the ALJ's findings and that Claimant selectively cites to Ms. Wilson's findings regarding Claimant's prognosis and ability to manage his resources. (Id. at 13.) Neither Ms. Tate nor Ms. Wilson however, assessed any mental limitations, only a prognosis and diagnoses, which are insufficient to establish disability. (Id. at 13-14.) Their mental status

examinations essentially yielded normal findings and Dr. Apgar noted that Claimant was able to concentrate and focus throughout his examination and that his interaction was appropriate. (Id. at 14.) The Commissioner notes that Drs. Shaver and Binder's opinions that Claimant's mental impairments were non-severe is supported by the record. (Id.) Accordingly, the Commissioner asserts that the ALJ reasonably concluded that Claimant could perform simple work with limited interaction with others. (Id.)

Claimant also asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to evaluate properly his credibility. (Document No. 12 at 6-10.) He asserts that his credibility is substantiated by the diagnoses of Ms. Tate, the prognosis and inability to manage finances of Ms. Wilson, and the physical diagnoses of Dr. Apgar. (Id. at 6-7.) He asserts that his allegations and the medical evidence are mutually supportive. (Id. at 7-8.) He notes that his multiple physical limitations with pain demonstrate that he is disabled. (Id.) Claimant further asserts that the ALJ used boilerplate language in violation of SSR 96-7p. (Id. at 8-9.) Claimant also asserts that the ALJ erred in giving little weight to Dr. Apgar's opinion, which validated Claimant's allegations. (Id. at 9-10.)

In response, the Commissioner asserts that the ALJ explained the reasons for her credibility finding and that pursuant to SSR 96-7p, the ALJ stated the weight given Claimant when she found that he was "not fully credible." (Document No. 13 at 15-18.) She stated that Claimant's complaints were inconsistent with the objective evidence of record. (Id. at 16.) The Commissioner further asserts that the ALJ complied with SSR 96-7p when she considered Claimant's testimony, the treatment record, the clinical findings, and the opinion evidence. (Id. at 17.) Regarding Dr. Apgar's opinion, the Commissioner asserts that the ALJ was not required to give his opinion enhanced weight. (Id. at 18.) The Commissioner notes that Dr. Apgar was a one-time examiner and that as the ALJ found, the record

did not support disabling physical limitations. (Id.) The Commissioner notes that the ALJ also considered Claimant's activities and the opinions of Drs. Pehany and Galadon. (Id. at 19.) Thus, the ALJ did not err in giving Dr. Apgar's opinion less weight. (Id.)

Analysis.

1. RFC Assessment.

Claimant first alleges that the ALJ failed to consider SSR 96-9p in assessing his RFC. (Document No. 12 at 5-6.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

SSR 96-9p provides that a "substantial loss to meet any of the basic work-related activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-9p, 1996 WL 374185 *9 (July 2, 1996). A less than substantial loss however, may or may not erode the occupational base and the ALJ is required to assess a

claimant's remaining capacities and may consult a vocational expert. Id. In this case, the ALJ found that Claimant was capable of performing a limited range of sedentary work, which involved simple routine tasks with no more than simple, short instructions, simple work-related decisions, few workplace changes, occasional interaction with the public, and frequent interaction with co-workers and supervisors. (Tr. at 24-25.) Thus, the ALJ found that Claimant had less than a "substantial loss." She therefore consulted testimony from a VE, who testified that with the aforementioned limitations, Claimant was capable of performing the jobs of security monitor, inspector, and marker. (Tr. at 51-52.) Consequently, the Court finds that the ALJ complied with the requirements of SSR 96-9p.

Claimant also alleges that the ALJ's assessment of mild mental limitations in three of the broad functional areas was inconsistent with Ms. Tate's diagnoses and Ms. Wilson's prognosis and finding that Claimant was capable of managing his finances. (Document No. 12 at 6.) The record demonstrates that on September 21, 2010, Lisa C. Tate, M.A., a licensed psychologist, conducted a consultative examination. (Tr. at 779-85.) Ms. Tate observed that Claimant maintained good grooming and personal hygiene, walked slowly with a cane, and appeared uncomfortable when seated. (Tr. at 779.) Claimant reported that he was diagnosed with bipolar disorder 12 to 13 years prior, characterized by manic mood swings. (Tr. at 780.) He also reported daily depression since his youth, which had worsened, and was accompanied by feelings of sadness, hopelessness, and helplessness; social withdrawal; and loss of interest in activities. (Id.) He further reported panic attacks since childhood, when he was beaten repeatedly and molested. (Id.) He indicated that the panic attacks occurred every two days for two minutes up to two hours. (Id.) The panic attacks were characterized by shortness of breath, profuse sweating, problems with concentration, rapid heart rate, feeling as if his heart skipped a beat, and chest pressure and tightening. (Id.) Claimant also reported having taken opiates for 12 years with then current treatment in a methadone program for the past 12 to 18 months. (Tr. at 781.) Claimant noted

10

that he first underwent outpatient mental health treatment when he was eight years old, for approximately three to four years. (Id.) He later returned to treatment between the ages of 12 and 14. (Id.)

On mental status examination, Claimant was alert and oriented, had a depressed observed mood and a mildly restricted affect, presented logical and coherent thought processes, denied delusions or obsessions, reported no unusual perceptual experiences, had normal judgment and fair insight, denied suicidal or homicidal ideation, and had normal memory, concentration, and psychomotor behavior. (Tr. at 782.) Ms. Tate diagnosed opioid dependence in remission with methadone treatment, mood disorder NOS with features of depression, and panic disorder without agoraphobia. (Id.) Ms. Tate noted Claimant's activities to have included going to the methadone clinic, straightening the house, resting, reading a lot, showering and washing dishes every other day, and going to events with his fiance's family on a monthly basis. (Tr. at 783.) She opined that Claimant's social functioning, concentration, persistence, and pace all were within normal limits, and that he was capable of managing benefits. (Tr. at 783-84.)

On July 8, 2010, Dr. James Binder, M.D., a state agency consultant, completed a form Psychiatric Review Technique, on which he opined that Claimant's mood disorder with features of depression, panic disorder without agoraphobia, and opioid dependence in remission with methadone, were non-severe mental impairments. (Tr. at 786-99.) Dr. Binder further opined that Claimant's mental impairments resulted in mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace and no episodes of decompensation of extended duration. (Tr. at 796.)

Emily E. Wilson, M.A., a licensed psychologist, conducted a consultative examination on February 23, 2011. (Tr. at 814-20.) Claimant reported many symptoms of anxiety with a multiple year

history, characterized by panic attacks. (Tr. at 815.) He reported daily depression, characterized by an increased appetite with weight gain, difficulty sleeping, loss of energy, feelings of worthlessness, increased irritability and worry, and mood swings. (Id.) Ms. Wilson noted Claimant's activities to have included performing grooming and hygiene independently, light picking up around the house, driving 15 to 20 minutes at a time, reading, and watching television. (Tr. at 817-18.) His wife assisted him with putting on his shoes and handling the finances. (Id.) On mental status examination, Claimant walked with a slow gait and cane, was cooperative and interacted appropriately, exhibited relevant and coherent speech, was oriented, had an appropriate mood and restricted affect,  had no loosening of thought or associations, had adequate insight and normal judgment, denied suicidal or homicidal ideation, had average concentration, exhibited frequent twitches or spasms, and had normal memory, pace, and persistence. (Tr. at 818.) Ms. Wilson diagnosed opiate dependence in remission due to methadone treatment, mood disorder NOS with depression, and panic disorder without agoraphobia. (Tr. at 818-19.) She opined that Claimant's prognosis was fair if he was able to obtain consistent and appropriate psychotropic and psychological interventions and needed assistance in managing his finances. (Tr. at 819.)

Ms. Wilson conducted a further consultative evaluation on June 22, 2011. (Tr. at 856-62.) Claimant reported that he drove himself to the evaluation. (Tr. at 856.) He reported that he performed activities of daily living independently, but did not cook or clean. (Tr. at 859.) He indicated that he drove but did not shop for himself or handle his finances. (Id.) He reported that he read and watched television. (Id.) On mental status examination, Ms. Wilson observed adequate grooming and hygiene, a slow gait, and that Claimant was cooperative and maintained good eye contact. (Id.) Claimant interacted appropriately, exhibited relevant and coherent speech, was oriented, had an appropriate mood and somewhat restricted affect, denied delusions or obsessions, denied hallucinations or

illusions, had fair insight and judgment, reported a suicidal attempt ten years ago but denied current suicidal or homicidal ideation, had normal immediate and recent memory but somewhat deficient remote memory, had average concentration, exhibited slowed psychomotor activity, and had normal persistence and pace. (Tr. at 859-60.) Ms. Wilson diagnosed opioid dependence sustained in remission due to methadone treatment, mood disorder NOS, and cannabis-related disorder NOS. (Tr. at 860.) She opined that Claimant's prognosis was guarded due to his health problems, back pain, history of drug addiction, and mood disorder. (Tr. at 861.) She further opined that Claimant was unable to manage his finances. (Id.)

Dr. Joseph A. Shaver, Ph.D., a State agency consultant, completed a form Psychiatric Review Technique on July 12, 2011, on which he opined that Claimant's mood disorder NOS, anxiety disorder, and opiate dependence in remission were non-severe impairments. (Tr. at 872-85.) He further opined that Claimant's mental impairments resulted in mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace and no episodes of decompensation of extended duration. (Tr. at 882.)

Based on the evidence of record, the ALJ concluded that Claimant's limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace were mild in nature, and that he had experienced one or two episodes of decompensation. (Tr. at 24.) Despite the finding of only mild functional limitations, the ALJ concluded that Claimant's depression and anxiety were severe impairments. (Tr. at 22.) In making this finding, the ALJ gave "some weight" to the opinions of the State agency consultants' opinions, in so far as they assessed mild limitations, but gave Claimant the benefit of the doubt and found that his impairments were severe. (Tr. at 29.) Respecting Ms. Tate's and Ms. Wilson's opinions, the ALJ found that their opinions were not inconsistent with her assessed RFC, giving Claimant some benefit of the doubt in consideration of his early childhood mental issues

and perception of pain. (Id.) It is clear from Ms. Tate's and Ms. Wilson's reports of their consultative examinations that they did not assess any work-related limitations resulting from Claimant's mental impairments. The ALJ acknowledged their diagnoses. The existence of a diagnosis however, without establishing significant functional loss, is insufficient to prove disability. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating that "a psychological disorder is not necessarily disabling. There must be a showing of related functional limitation.") The same holds true for Ms. Wilson's guarded prognosis. Without more, a prognosis does not establish disability. Ms. Wilson assessed a guarded prognosis based on Claimant's continuing health problems, back pain, history of drug addiction, and mood disorder. However, she failed to assess any work-related limitations. The only possible limitation was when she opined that he was incapable of managing his resources, which appeared to be based on Claimant's statement that he messed up his check book. (Tr. at 859, 861.) Nevertheless, Ms. Wilson's finding and Claimant's statement did not establish significant work-related limitations. Both Ms. Wilson and Ms. Tate essentially noted normal findings on mental status examination. Additionally, Claimant reported that he was able to concentrate and focus to read and watch television, was able to shop every two or three days, straightened up the house a little bit, and was able to care for his personal needs. (Tr. at 26-27.) To the extent that the ALJ gave Claimant the benefit of the doubt, she found that Claimant was limited to performing simple routine tasks with simple, short instructions and work-related decisions. She also restricted Claimant to occasional interaction with the public to accommodate his anxiety around strangers. She further limited him to frequent interaction with supervisors and co-workers. Based on the foregoing, the Court finds that the ALJ properly assessed Claimant's RFC pursuant to the Regulations and Rulings and that her RFC assessment is supported by substantial evidence of record.

14

2. Claimant's Credibility.

Claimant also alleges that the ALJ erred in assessing his credibility. (Document No. 12 at 6-10.)   A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Craig v. Chater, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012). Additionally, the Regulations

provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the

16

individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 25.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. at 29.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 25-29.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 29.)

Claimant argues that under the mutually supportive test recognized in Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), he satisfies the requirements of 42 U.S.C. § 423(d)(5)(A), because the evidence of record, including his testimony and statements, is supported by substantial evidence. (Document No. 12 at 7-8.) Claimant has misinterpreted the holding in Coffman. In that case, the issue was not one of credibility but whether the ALJ applied the appropriate standard in weighing the treating physician's opinion that the claimant was disabled from gainful employment. Coffman, 829 F.2d at 517-18. The Fourth Circuit concluded that the ALJ had misstated the legal principles and standards and improperly discounted the physician's opinion due to a lack of corroborating evidence. Id. at 518. The Court held that the correct standard required a treating physician's opinion to be "ignored *only* if there is persuasive contradictory evidence." Id. There, the physician provided medical reports with his opinion letter. Id. The record also included findings of two other physicians and the testimony of the claimant. Id. In view of the of the supporting evidence, the Fourth Circuit noted that [b]ecause Coffman's complaints and his attending physician's findings were mutually supportive, they would satisfy even the more exacting standards of the Social Security Disability Benefits Reform Act

of 1984, 42 U.S.C. § 423(d)(5)(A)." Id. Accordingly, the undersigned finds contrary to Claimant's argument that Coffman fails to offer any "mutually supportive" test applicable to assessing a claimant's credibility. For the reasons set forth herein, the undersigned finds Coffman inapposite and Claimant's argument without merit.

Respecting Claimant's physical impairments, the record reflects that Dr. Drew C. Apgar, D.O., conducted a consultative examination on June 18, 2010. (Tr. at 761-78.) Claimant reported a history of chronic pain, primarily in his back, as well as his knees. (Tr. at 762.) Claimant used a cane for ambulation. (Id.) Claimant injured his back eight years prior when lifting a five-gallon can and then his injury was aggravated by a ladder fall from a two-story building. (Id.) He underwent two surgeries, including a shave of the herniation at L3-L4 and a spinal fusion. (Id.) Claimant was diagnosed with degenerative disc disease and used opiates for eight years to maintain his pain and then used daily methadone for treatment. (Id.) He also had knee problems that coincided with his back problem and reported that his left knee almost was useless and resulted in occasional falls. (Id.) Claimant reported a mitral valve prolapse, but Dr. Apgar noted than a 2008, echocardiogram showed normal mitral valve structure without evidence of prolapse. (Id.) Claimant also reported a history of hypertension but was not taking any prescription medication to manage his condition. (Id.) Claimant further reported occasional chest pain with radiation to his shoulder and neck, shortness of breath with exertion and when lying flat on his back, sleep apnea, anxiety, and a history of heartburn, abdominal pain, diarrhea, constipation, and hemorrhoids. (Tr. at 762-63.) Claimant admitted to having suicidal ideation six months prior and was seeing a counselor for therapy. (Tr. at 763.)

On physical exam, Dr. Apgar observed that Claimant was able to get on and off the exam table without difficulty, maintained good posture, was able to move about the room without difficulty, and was able to dress and undress without difficulty. (Tr. at 767.) Muscle strength was 5/5 in the upper

extremities and 4/5 in the lower extremities. (Tr. at 772.) Claimant had an unsteady, antalgic gait. (Id.) Dr. Apgar opined that based on the objective findings, Claimant would have no difficulty handling objects. (Tr. at 773.) Nevertheless, he opined that he had marked difficulty standing, walking, sitting, lifting, carrying, pushing, pulling, and traveling. (Id.) He further opined that Claimant's mental status essentially was normal. (Id.) Dr. Apgar found that Claimant's memory, concentration, and focus were intact and that his interaction and adaptation were considered appropriate. (Id.) He finally opined that there was no limitation by education and therefore, that Claimant was capable of managing any benefits. (Id.)

Dr. Atiya M. Lateef, a State agency physician, completed a form Physical RFC Assessment on July 21, 2010. (Tr. at 800-07.) Dr. Lateef opined that Claimant was capable of performing less than light exertional level work, which included lifting and carrying 20 pounds occasionally and 10 pounds frequently, stand and walk two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and perform unlimited pushing and pulling. (Tr. at 801.) Dr. Lateef also assessed occasional postural limitations except that Claimant could never climb ladders, ropes, or scaffolds; and opined that Claimant should avoid concentrated exposure to temperature extremes, vibration, and irritants and must avoid all exposure to hazards. (Tr. at 802-04.)

On May 13, 2011, Dr. S. Pehany, M.D., and Dr. P.A. Galadon, M.D., completed a form General Physical (Adults) for the West Virginia Department of Health and Human Resources Medical Review Team (MRT). (Tr. at 913-15.) They opined that Claimant was unable to return to his past work due to instability of gait, but was capable of performing other full-time work in a "desk setting." (Tr. at 914.) They further opined that Claimant should avoid prolonged standing or heavy lifting. (Id.)

On June 18, 2012, Dr. Joseph Bradley Hess, M.D., of University Physicians & Surgeons, opined that Claimant was unable to stand in line for prolonged periods of time and requested expedited

acquisition of medication. (Tr. at 945.)

In her decision, the ALJ acknowledged Claimant's testimony, summarized the medical and opinion evidence of record, acknowledged Claimant's activities of daily living, and acknowledged his history of opiate use to treat pain. (Tr. at 22-29.) Although Claimant reported significant pain in his back, the ALJ noted that Claimant's physical and neurological examinations essentially were normal, which contradicted Claimant's testimony of neurological compromise. (Tr. at 28.) The ALJ also considered Claimant's mental impairments, and as stated above, found that the evidence of record failed to support Claimant's disabling allegations. (Tr. at 22-29.) The ALJ gave Dr. Apgar's opinion some weight because it was vague and could not be relied upon. (Tr. at 29.) As a one-time examining physician, the ALJ was not required to give Dr. Apgar's opinion controlling weight. Dr. Apgar's opinion was vague in that he assessed marked difficulty standing, walking, sitting, lifting, carrying, pushing, pulling, and traveling. However, he failed to define the term "marked" and failed to indicate the extent to which Claimant could perform these activities. Furthermore, Dr. Apgar's opinion was vague in that his physical exam failed to reveal any significant adverse findings, but yet he assessed marked limitations. The ALJ's physical RFC assessment acknowledged Dr. Apgar's opinions but was more consistent with the opinion of Dr. Lateef, which was supported by the record as a whole. The Court finds that the ALJ's decision to accord Dr. Apgar's opinions only some weight is supported by the substantial evidence of record.

Claimant also argues that the ALJ's use of boilerplate credibility language warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Document No. 12 at 8-9.) Pursuant to SSR 96-7p, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. "The reasons for the credibility finding must be grounded in the evidence and

articulated in the determination or decision." Id. The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In this case, it is clear that the ALJ used boilerplate language regarding the two-step credibility analysis. (Tr. at 22-29.) Claimant takes issue with the ALJ's use of boilerplate language in finding that he was not credible to the extent that his statements were inconsistent with the ALJ's RFC assessment. (Tr. at 29.) However, the ALJ went on to explain the specific reasons for her credibility determination and specifically cited the medical evidence, Claimant's testimony and reports, Claimant's activities, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and the Fourth Circuit has not enunciated any format that should be utilized in finding a claimant's testimony incredible. In finding that Claimant was not credible, the ALJ indicated the weight given to Claimant's testimony. Accordingly, pursuant to SSR 96-7p, the Court finds that the ALJ's credibility finding sufficiently was articulated and explained with references to the specific evidence that formed her decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.       The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2015.

22

R. Clarke VanDervort
United States Magistrate Judge